# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     *     CRIMINAL NO. 19-204

v.     *     SECTION: "H"

JAVONTA DOLEMAN, ET AL.     *

       *     *     *

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL (RULE 29), OR IN THE ALERNATIVE, FOR NEW TRIAL (RULE 33)

Defendant Javonta Doleman submits this memorandum in support of the motion for judgment of acquittal, or in the alternative, for new trial.

**I.     THE COURT SHOULD GRANT A NEW TRIAL BECAUSE DOLEMAN WAS PREJUDICED BY IMPROPER FBI AGENT TESTIMONY SOLICITED BY BOVIA'S COUNSEL'S IN REPEATED VIOLATION OF THE COURT'S IN LIMINE RULING.**

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980). "[E]ven a single error during the trial process could, if of sufficient magnitude, warrant a new trial" in the interest of justice. *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980) (citing *United States v. Gainey*, 380 U.S. 63(1965)).

The Fifth Circuit has "unequivocally condemn[ed] the practice" of using a government agent overview witness. *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003); *United States v. Fullwood*, 342 F.3d 409, 413 (5th Cir. 2003). Such testimony wrongly allows the government (1) to spin the evidence in its favor, (2) to give its official imprimatur to certain evidence, and (3) "to allow its witnesses (usually law enforcement) to testify on matters about which they have no

personal knowledge or that are based on hearsay." *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013). Such testimony "greatly increases the danger that a jury might rely upon the alleged facts in the overview as if those facts had already been proved" or "use the overview as a substitute for assessing the credibility of witnesses that have not yet testified." *Griffin*, 324 F.3d at 349; *see also United States v. Nguyen*, 504 F.3d 561, 572 (5th Cir. 2007); *United States v. Rainey*, 2015 WL 3446647, at *1 (E.D. La. 2015) (Englehardt, J.).

Prior to trial Doleman filed a motion *in limine* to prohibit exactly such highly prejudicial testimony. Dkt. 1297. Defendants Bovia and Williams joined the motion. Dkt, 1306, 1313, 1322. The Court ruled that it "will not permit witnesses to summarize live testimony, give testimony akin to a closing argument, or backdoor "highly inculpatory hearsay via an explaining-the-investigation rationale."" Dkt. 1382 (quoting *Fullwood*, 342 F. 3d at 414, and citing *United States v. Sharp*, 6 F.4th 573, 582 (5th Cir. 2021)).

Day 4 of Trial

But early in the trial, counsel for Bovia asked questions seeking to elicit case agent opinion testimony in violation of the motion *that Bovia had joined*. During the testimony of FBI Special Agent James Ollinger on day 4, the issue came to a head. The Court ordered a sidebar at which the following exchange occurred:

> THE COURT: Come here.
>
> (The following proceedings were held sidebar.)
>
> THE COURT: I'm a bit perplexed because it is outside of the scope. Are you going to ask him to define the Byrd Gang as a –
>
> MS. CONNER: I just did.
>
> THE COURT: Then you are asking him opinion testimony. I'm not going to allow you to make this man an expert so that you can call somebody else. I don't know if that's what you are setting up.

MS. CONNER: I'm not.

THE COURT: You are asking him opinion testimony. You said, "What is your opinion of these things?" Then if they go back and redirect and ask him his opinion, you are going to be objecting.

MR. CLARKE: Your Honor, I object to this question about his opinions as well.

THE COURT: You are treading in dangerous territory. I'm not going to allow it because then you are going to back-door and say, "Well, he gave opinion testimony. I'm going to call an expert."

MS. CONNER: I think I'm entitled to cross-examine him on the limit of his focus and why he thinks –

THE COURT: That's not what you did. You were asking him other questions. You can ask him that, but that's not what you are doing.

MS. CONNER: I'm sorry. What is the question that you think I can ask him?

THE COURT: You are asking, "What is your opinion?" "Define the Byrd Gang," and I was waiting for, "It is a criminal enterprise."

MS. CONNER: But that's his opinion because all he has ever done there is to watch people.

THE COURT: I think you need to tread carefully.

MS. CONNER: Okay.

THE COURT: I think you can ask him if the focus of his investigation was only criminal activity.

MR. CLARKE: Your Honor, I just want to note I think that this is eliciting case agent testimony of the type we objected to –

THE COURT: That's exactly what it is. That's exactly what it is.

MR. CLARKE: I'm concerned if this opens the door to the government –

MR. HALLER: It's already opened the door.

MR. CLARKE: I object to it. I don't think it's opened and –

MS. CONNER: I'll move on.

3

THE COURT: I think that's a good idea. (End of sidebar conference.)

Dkt. 1640, pp. 98-100.

But counsel did not move on. Several minutes later, Bovia's counsel sought another opinion from Special Agent Ollinger, which forced undersigned counsel for Mr. Doleman *to object to a co-defendant's attorney's question in front of the jury*.[1] The Court sustained the objection. *Id.*, p. 114. Two pages later, Bovia's counsel did it again. Doleman's counsel objected and the Court sustained the objection. *Id.*, p. 116. The Court was seemingly as baffled as everyone else as to why Bovia's counsel continued to seek opinion testimony. The court called a sidebar and stated:

> THE COURT: Mr. Doleman filed a motion that you-all joined in to stop this witness from giving just the kind of testimony you are attempting to elicit from him. You want him to interpret these things. There was a motion saying he should not do that, . . . You are asking him to interpret, and it's in violation of the motion that your client joined into filed by Mr. Doleman. Where are we going and what are you doing? Do you plan to open the door and redirect them to go through everything?

*Id.*

When Bovia's counsel continued to contend that her questions were proper, the Court issued a warning, counsel for Doleman stated his intention to seek a severance and mistrial, moved for mistrial and counsel for Williams also voiced his objection to Bovia's questioning.

> THE COURT: All right. Just understand, you are opening the door, and he is going to now come in and testify, give his opinion as to what all of this means.

> MR. CLARKE: Your Honor, if she does that, I seek a severance, and I will seek a mistrial. Ms. Conner is asking this witness to interpret evidence. Maybe she doesn't realize it, but an FBI agent is not going to give the defense the interpretations it wants. That's why all of us filed an in limine motion. As Your Honor noted, these questions are asking to violate it. That is why I am in the unfortunate position of having to object because the government then is going to stand up, and I promise everyone this FBI agent will not give opinions that we like.

---

[1] In thirty years as a defense attorney, undersigned counsel had never objected to a co-defendant's counsel's question in a criminal jury trial. I would have objected earlier but I knew that doing so in front of the jury would be highly prejudicial to Mr. Doleman,

*Id.,* p. 117

When Bovia's counsel continued to press her position, the Court excused the jury, asked the witness to step out of the courtroom, and a lengthy conference was held at which Bovia's counsel continued to assert that her questions were proper. *Id.*, pp. 119-127.  The Court concluded the conference as follows:

> THE COURT: Again, Ms. Conner, I'm going to shut you down because you are in violation of your own motion in limine. I'm going to say that we have shut the door promptly, but I have to tell you, I expect an objection from the government because they think it's been opened. I am going to instruct the jury that interpretations from this witness should be ignored. We are going to take a break.
>
> MS. CONNER: Please note my objection.
> \
> THE COURT: Your objection is noted. (Recess.)

*Id.*, pp. 126-27.

But that was not the end of it. Not by a longshot.

Day 6 of trial

Early in the second week, Special Agent Ollinger testified again. Bovia's counsel continued seeking his opinions, counsel for Doleman was again forced to object in front of the jury, and the Court continued to sustain the objections. When Bovia's counsel would not stop, the Court again called a sidebar. Exihbit 1, attached, at pp. 53. 55-56. ("THE COURT: Okay. We're back to where we were." *Id.*, p. 55:14).

Despite the Court's admonition, Bovia's counsel continued asking improper questions, Doleman's counsel was continually forced to object to a co-defendant's attorney's questions in front of the jury, and the Court continued to sustain the objections.

> THE COURT: I'm just going to sustain that objection –
>
> MS. CONNER: Understood.

THE COURT: -- and caution you.

MS. CONNER: Okay. I'm trying.

*Id.*, p. 59:3-7.

Counsel may have been trying, but three questions later she did it again.  In the next ten pages, Doleman's counsel objected to Bovia's counsel's questions six times. The Court sustained four objections and twice Court instructed Bovia's counsel to rephrase her question. After the seventh objection,  the Court called a sidebar.

> THE COURT: I'm getting nervous because there was a motion in limine that was filed that the government agreed and I said the motion was mooted because we know the law and he can't give opinion testimony, and it seems to me -- I just think we're in dangerous territory.

*Id.*, p. 69: 6-10.

The sidebar did not alter Bovia's counsel's strategy. In the next fifteen minutes (approximately) *Doleman's counsel was forced to object six more times in front of the jury*. Four objections were sustained, one was overruled, and the Court once instructed Bovia's counsel to rephrase her question. *Id.*, pp. 76-82. The Court again called a sidebar. At the sidebar Doleman's counsel told the Court that he believed Doleman was being prejudiced by the fact that his counsel was being forced to repeatedly object to the improper questions in front of the jury—*questions that violated the Court's order on a motion that Bovia joined*. *Id.*, p. 81-83. The Court then excused the jury and called the attorneys into chambers.  In chambers, Bovia's counsel continued to press her position.  The Court then requested that the prosecutors leave the room.

> THE COURT: Okay. This is -- I have never done this before. I'm going to ask the prosecutors to leave. I really feel like I need to have an ex parte conversation with defense counsel.

> [ASSISTANT U.S. ATTORNEY] MS. PRIVITERA: We'll be in the courtroom.

> (WHEREUPON, the U.S. Attorneys left the conference in chambers.)

MS. CONNER: Can I say one more thing before you talk?

THE COURT: You can say one more thing.

*Id.*, p. 87:6-15.

After Bovia's counsel continued to argue, the Court stated:

THE COURT: What I'm concerned about is I've got three defendants facing as serious offenses as they can, except that they haven't asked for the death penalty, but they're all looking at life imprisonment. And I've got lawyers that are fighting each other. And it is - - I, frankly, before this last objection that upset me, this last series of questions that I think I stopped it, I was going to at the next break call you in here. Because I think we have not yet crossed that bridge, but there has got to be some agreement between you all. I mean, I don't think you have to have a joint defense. I don't think you have to have the same defense. I don't think you all have to have the same theory. But there are some serious lines that have to be agreed upon, and this is the second time where we've had these. ***And, to be frank, Ms. Conner, you continually push for them to give their opinion as to these. And I have two defendants that are begging you not to, that are objecting repeatedly, and to be sure, you don't generally see a co-defendant object in the middle of cross-examination. And I'll be honest with you, I know why he's doing it because I think we are treading on dangerous territory that impacts the defense of the other two defendants.***

*Id.*, p. 87:21-88:18.

MR. CLARKE: FBI agents get trained in how to testify. And I do think we're prejudiced at this point, Judge. I mean, you made a ruling last week, and Ms. Conner continues repeatedly to violate not only the in limine ruling, but your ruling during trial last week. And I think it is prejudicial. We're at a point where the jury is wondering what's going on: Why does that lawyer keep getting up to object? And I'm trying to not do it more than I have to, but I've got to - if they're allowed to open the door to opinion, we're prejudiced. And I just –

THE COURT: And then the prosecutors aren't objecting because they'd just as soon have him on redirect.

*Id.*, p. 89:8-18.

MR. WASHINGTON [COUNSEL FOR DEFENDANT WILLIAMS]: I mean, I didn't stand up and object today because of the optics of the objection. I think we hashed this out last week, and after the objection was made during cross by co-counsel, I didn't necessarily like the optics, but I understood. I think at some point either myself, Ms. Conner, or Mr. Clarke requested a sidebar, and I believe that's the best way to handle this because it does not look good. But I completely understand why they're objecting to it.

7

It's been ruled upon. We argued it at sidebar. And I don't have anything to add that hasn't been said before.

*Id.*, p. 89:8-19.

THE COURT: . . .Anything further on the record? I mean, I will tell you, I have never done this before, spoken to defense counsel ex parte, but I think we're getting ready to go into very, very dangerous territory, and I'm worried. Okay.

MR. WASHINGTON: Yes, Your Honor.

MR. CLARKE: I'm worried too, Your Honor

*Id.*, p. 92:22-93:3.

Doleman's counsel moved for a mistrial. The Court denied the motion. *Id.*, p. 93:10-17.

Day 8 of trial

On Day 8 FBI Special Agent Beau Barker testified. Bovia's counsel continued to seek opinion testimony. Doleman's counsel objected and moved for mistrial and severance. The Court denied the motions. Special Agent Barker weas allowed to offer his opinion that defendants were guilty and the Court overruled Doleman's objection. Exhibit 2, attached, pp. 59:24-64:11, The following are excepted from day 8.

Q. Okay. So it would have been important to run down all the leads in that case?

A. No, not when I have people that are inside the Byrd Gang that were involved in that event telling me that they have - they know that Terran Williams, Tyrone Bovia, and Javonta Doleman did that, then, no.

MR. CLARKE: Objection, Your Honor. Witness has just offered opinion testimony.

THE COURT: Wait. Stop.

MR. CLARKE: On the ultimate issue.

THE COURT: Well, come here.

(WHEREUPON, the following proceedings were held at the bench.)

THE COURT: She asked for it. I think she asked the question. She asked the question, so he's going to answer it.

MR. CLARKE: I object. I object.

THE COURT: To the question?

MR. CLARKE: I do, and I think it's –

THE COURT: Coming a little late.

\*\*\*\*\*\*

MR. CLARKE: I got it. I'm just telling you've made your point, so it's up to you if you want to go forward. I object to the last question, and I'll object to any further questions about his investigation or what he did or what his conclusions are. And I would just say to my colleague, Ms. Conner, you've made your point quite well. You don't need to drive it home any harder or he will rehabilitate himself.

MS. CONNER: With evidence?

THE COURT: You've asked him for his opinion. He's going to give it to you. There's an objection.

\*\*\*\*\*\*

THE COURT: I'm going to overrule the objection because she's -- even though it's asking for opinion testimony, in violation of the motion in limine that was filed by you guys, but it's really not because she's asking why didn't you -- I think she's asking him a direct question about his investigation. I don't know if it's an opinion. He's telling you what he did and why he did it. I'm going to allow him to answer.

MR. CLARKE: Well, Your Honor, can I just, for the record, move to sever? I think I'm being prejudiced by another violation of the Court's order that there was not to be opinion case agent testimony. This is literally the third time that you have told Ms. Conner that. I respectfully submit that if she has opened the door, then this is an antagonistic defense, and we are entitled to a severance. I do not understand why she asks these questions, but we are prejudiced by it.

THE COURT: I'm going to deny the severance because she has not -- it is not an antagonistic defense. I mean, she questions, you know, what he did, but she has not blamed your client for this. She has not indicated a situation where to believe her theory of the case, you have to necessarily disbelief yours.

MR. CLARKE: Your Honor, to be clear, I believe we've been prejudiced by three

violations of the Court's order.

THE COURT: That's on the record.

MR. CLARKE: And I move for a mistrial.

THE COURT: And that's denied. Let's go.

*Id.*

It is well-settled that under Fed. R. Crim. P. 14 that a court should grant a severance "where there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534 (1993). And importantly, "the risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here." *Zafiro v. United States*, 506 U.S. 534 (1993). Here, Doleman was prejudiced by repeated violations of the Court's in limine order by a party who sought that order, which created the repeated spectacle of Doleman's counsel being forced to object to Bovia's counsel's questions, the Court holding repeated sidebars and a chambers conference, and ultimately, an FBI agent being allowed to give his ultimate opinions about the defendants' guilt.

The Court gave repeated warnings to Bovia's counsel, and expressed her concern that the questioning was leading to "very, very dangerous territory." The Court took the unprecedented step of asking the prosecutors to leave the room so that she could attempt to reason with Bovia's counsel. It did not work. The improper questions continued. And this was not an isolated blip. Rather, the improprieties pervaded the trial.

 Doleman's counsel moved for severance and mistrial, showing immediate recognition of spillover prejudice. Ultimately, the FBI agent's testimony directly linked Doleman to guilt through

improper opinion testimony. As the Fifth Circuit has recognized, and as this Court recognized when it granted the motion in limine, such overview testimony "greatly increases the danger that a jury might rely upon the alleged facts in the overview as if those facts had already been proved" or "use the overview as a substitute for assessing the credibility of witnesses that have not yet testified." *Griffin*, 324 F.3d at 349. The record squarely presents the prejudice, contemporaneously objected to, and it cannot be attributed to the Doleman defense. Doleman was entitled to a mistrial and severance, and his motion for new trial should be granted.

## II. THE COURT SHOULD GRANT A JUDGMENT OF ACQUITTAL (OR IN THE ALTERNATIVE A NEW TRIAL) BECAUSE THE EVIDENCE WAS INSUFFICIENT TO PROVE THE CHARGED OFFENSES BEYOND A REASONABLE DOUBT.

A Rule 29 motion seeking a judgment of acquittal challenges the sufficiency of the evidence to convict. Fed. R. Crim. P. 29(a). "[D]ue process requires the government to present evidence sufficient to prove each element of a criminal offense beyond a reasonable doubt[.]" *United States v. Delgado*, 672 F.3d 320, 331 (5th Cir. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). Where the government fails to present evidence sufficient to allow the jury to find every element of the offense beyond a reasonable doubt or fails to do more than pile inference upon inference, a conviction cannot be sustained. *See United States v. Vargas*, 6 F.4th 616, 622 (5th Cir. 2021) (citations omitted); *see also United States v. Ventura*, No. 24-40100, 2025 WL 26063, at *4 (5th Cir. Jan. 3, 2025) (per curiam, citation omitted)("Although the government may use circumstantial evidence to prove any element of the crime, it cannot rely on 'an overly attenuated piling of inference upon inference.'"). Courts "assess a sufficiency challenge by asking whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Vargas*, 6 F.4th at 622. This calls for an evaluation of "whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the

11

evidence is sufficient to establish every element of the crime." *United States v. Garcia*, 883 F.3d 570, 573 (5th Cir. 2018) (quoting *Vargas-Ocampo*, 747 F.3d at 301). Though evidence is viewed in the light most favorable to the verdict and it is unnecessary that the evidence exclude every reasonable hypothesis of innocence, "the government must do more than show that the defendants 'could have been guilty.'"

Here, the vast bulk of the evidence had nothing to do with Doleman. The jury heard the testimony of Roy Lee, the major heroin supplier to the Byrd Gang, who had never met Doleman. It reviewed scores of exhibits showing Tim Jackson displaying weapons and drugs, but there was no evidence to connect Doleman to Jackson. The Government ceremoniously displayed scores of guns to the jury, most of which had no connection to Doleman. It systematically presented evidence of over ten acts of gang violence that had no connection to Doleman.

In the alternative, this Court should grant Doleman a new trial. Even if the Court finds that sufficient evidence was presented to support a conviction on the charged counts, the evidence preponderated heavily against the guilty verdicts such that a new trial is warranted. Unlike reviewing a motion for judgment of acquittal, when the district court reviews a Rule 33 motion for a new trial, it may assess the credibility of witnesses and weigh the evidence. *United States v. Herrera*, 559 F.3d 296, 302 (5th Cir. 2009). "Setting aside a jury's guilty verdict in the interests of justice may be appropriate under circumstances where the evidence brought forth at trial may tangentially support a guilty verdict, but in actuality, 'preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred.'" *Id.* (citation omitted).

This Court may conclude that the testimony of Ernest Thomas and Tary Butler is sufficient to deny a Rule 29 motion. However, this Court may evaluate the credibility of those witnesses and grant Doleman a new trial.

## <u>CONCLUSION</u>

For the reasons stated above, Javonta Doleman respectfully requests that this Court grant him a judgment of acquittal under Rule 29, or in the alternative, a new trial under Rule 33.

Respectfully submitted,

**/s** *Shaun G. Clarke*
Shaun G. Clarke
Michelle S. Stratton
Murphy Ball Stratton, LLP
650 Poydras Street
Suite 1400
New Orleans, LA 70130
713-858-1657 (cell)
Email: sclarke@mbssmartlaw.com

**COUNSEL FOR DEFENDANT, JAVONTA
DOLEMAN**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was served electronically on

December 8, 2025, upon all attorneys of record via the Court's CM/ECF system.

/s/<em>Shaun G. Clarke</em>_____